T. H. RONEY, as Trustee of the Peterson Machine Company, a Corporation, v. H. S. HALVORSEN COMPANY, a Corporation, Hammer-Condy Company, a Corporation, Hammer-Halvorsen-Beier Elevator Company, a Corporation.

(149 N. W. 688.)

**Executory contract for sale of land — vendor — possession — title to crops — cancelation of contract — notice of.**

1. A vendor under an executory contract for the sale of land, and who is not in possession thereof, has no title to the crop raised and severed by the vendee in possession, even though the severance takes place after notice of the cancelation of the contract by reason of failure to make the necessary payments.

**Election of remedy — cannot change or repudiate after once made — knowledge of the facts.**

2. A party may not take contradictory positions; and where he has a right to choose one of two modes of redress, and the two are so inconsistent that the assertion of one involves the negation or repudiation of the other, his deliberate and settled choice of one, with knowledge, or means of knowledge, of such facts as would authorize a resort to each, will preclude him thereafter from going back and electing again.

**Cancelation of contract — vendor — choice of mode of redress — unpaid balance of purchase price — no right to same.**

3. A vendor in an executory contract for the sale of land, who has clearly

Note.—On the general question of the right to crops growing on real estate sold under contract, see notes in 35 L.R.A.(N.S.) 1066; and 38 L.R.A.(N.S.) 420.

elected to cancel the same and not abide by it, has no right of action for
the unpaid balance of the purchase price.

**Crops raised by vendee — right to, in vendee — conversion by vendor — action by vendee — vendor cannot counterclaim balance due under contract.**

4. Where the vendee in a land contract has sowed and harvested grain
upon the land involved, and the vendor wrongfully seizes said grain, such
vendor will not be allowed to counterclaim, in an action for the conversion
thereof, payments claimed to be due and owing on such land contract. Such
claim does not arise out of the contract or transaction set forth in the complaint as the foundation of plaintiff's claim, nor is it connected with the subject of the action.

Opinion filed November 10, 1914.

Appeal from the District Court of Cass County, *Pollock, J.* Action
of trover for the conversion of grain. Counterclaim for balance due on
land contract. Judgment for plaintiff. Defendants appeal.

Affirmed.

Statement by BRUCE, J.

This is an action brought by T. H. Roney as trustee of the Peterson
Machine Company to recover of appellants for the conversion of certain flax of the stipulated value of $1,500. The defendant, the Halvorsen Company, secured a contract to purchase the land on which the flax
was grown, from the state of North Dakota. Thereafter it contracted
with one Patterson to assign its contract with the state to him for $7,-
200, $600 of the purchase price being paid by Patterson in cash, $1,-
000 due under the contract on March 1, 1911, $1,000 on November 1,
1911, and the balance due November 1, 1912. Thereafter the said Halvorsen Company assigned its interest in the said contract to the defendant, the Hammer-Condy Company. In April, 1912, and after the payment of $1,000 to be made on March 1, 1911, became due, Patterson
assigned his interest in the land to the plaintiff Roney as trustee, etc.,
with the knowledge and consent of the Halvorsen Company. The said
Halvorsen Company agreed to accept the balance of the purchase price
on said real estate from the said Roney. After this assignment, Roney
immediately entered into possession of the land, and, with the Halvorsen Company's knowledge, sowed the land to flax. On July 20, 1911,

none of the payments, except the original payment of $600, having been made, the Halvorsen Company served on the said Roney a notice of cancelation of the contract, claiming that the $1,000 instalment of March 1, 1911, was past due and unpaid. Although the said Roney testified to a waiver of this default or an agreement with the Halvorsen Company to extend such payment to November 1, 1911. After the thirty days specified in the notice had lapsed, the Halvorsen Company claims to have made an arrangement with Roney's tenant to cut the flax for them, but admits that Roney knew nothing of this agreement. Roney, on the other hand, testified that his tenant advised him that he had cut the flax for him, and that threshing would commence late in October, 1911. Later Roney sent a man to look after the threshing, and found that the Halvorsen Company had seized the crop and was threshing it. After such seizure the Halvorsen Company turned over one half of the flax to Roney's tenant, though under the lease between Roney and the tenant the whole of such flax belonged to Roney until the division and the plowing back of the land in the fall, which Roney testified was not done. The other half of the flax, being of the stipulated value of $1,500, the Halvorsen Company kept, and it is for the conversion of this portion that the action was brought and the recovery was permitted in the lower court. The Halvorsen Company in its answer claimed that the cancelation proceedings devested Roney of any interest in the land and in the crops, and also set up a counterclaim asking to have the value of the flax applied as an offset on the amount due from Roney on the purchase price of the land under the contract alleged to have been canceled. At the close of the trial Roney moved for a directed verdict on the ground that the evidence showed that he, Roney, was in undisturbed possession of the land and the grain growing thereon, until after the latter was cut and to be threshed, and that the Halvorsen Company's remedy, if any, was limited to the recovery of the value of the use and occupation of the land during the time Roney was in possession after default, if he was in default. Plaintiff, Roney, also urged that the Halvorsen Company did not seek to recover the value of the use of the land in the action, and that, since the grain was wilfully and wrongfully converted, the damages arising from the breach of the contract were not pleadable as a counterclaim in an action for the conversion of such property; also that if the Halvorsen Company's

cancelation of the contract was properly made, and operated to cancel the contract, it discharged, the indebtedness.

*Lee Combs* and *L. S. B. Ritchie,* for appellants.

The service of the notice of cancelation of the contract for the sale of the land, in form as required by statute, forecloses, cancels, and terminates all interest of the vendee in the contract. Hage v. Benner, 111 Minn. 365, 127 N. W. 3; Lafrance v. Griffin, 160 Mich. 236, 125 N. W. 34; Golden Valley Land & Cattle Co. v. Johnstone, 21 N. D. 97, 128 N. W. 691; Williams v. Corey, 21 N. D. 509, 131 N. W. 457, Ann. Cas. 1913B, 731; Rev. Codes 1905, §§ 7494–7497; Schmidt v. Williams, 72 Iowa, 317, 33 N. W. 693.

Defendant had the right to counterclaim the balance due on the contract. The word "transaction," and the phrase "connected with the subject of the action," do not mean merely, or refer alone to, the wrong of which complaint is made, but are construed to include all the facts and circumstances out of which arose the injury. 34 Cyc. 687; Story & I. Commercial Co. v. Story, 100 Cal. 30, 34 Pac. 671; Ritchie v. Hayward, 71 Mo. 560; Lapham v. Osborne, 20 Nev. 168, 18 Pac. 881; 34 Cyc. 660, cases cited in note 21; Hanson v. Skogman, 14 N. D. 445, 105 N. W. 90; Christofferson v. Wee, 24 N. D. 506, 139 N. W. 689.

It is well settled that one in possession under color of title to real estate may state, if he knows, who owns it. Olson v. O'Connor, 9 N. D. 504, 81 Am. St. Rep. 595, 84 N. W. 359; Ochsenreiter v. George C. Bagley Elev. Co. 11 S. D. 91, 75 N. W. 822.

*Lawrence & Murphy,* for respondent.

Plaintiff was at all times the owner and entitled to the possession of the flax in question. He was in possession of the land under the contract of sale to him, and entitled to all beneficial use of same. Nearing v. Coop, 6 N. D. 345, 70 N. W. 1044; Golden Valley Land & Cattle Co. v. Johnstone, 21 N. D. 101, 128 N. W. 691, Ann. Cas. 1913B, 631; Brown v. Newman, 15 N. D. 1, 105 N. W. 941; Rev. Codes 1905, § 4752; Churchill v. Ackerman, 22 Wash. 227, 60 Pac. 406; Stockwell v. Phelps, 34 N. Y. 363, 90 Am. Dec. 710; Page v. Fowler, 39 Cal. 412, 2 Am. Rep. 462; Martin v. Thompson, 62 Cal. 618, 45 Am. Rep. 663; Lindsay v. Winona & St. P. R. Co. 29 Minn. 411, 43 Am. Rep. 228, 13 N. W. 191; Woodcock v. Carlson, 41 Minn. 542, 43 N. W. 479;

Aultman & T. Co. v. O'Dowd, 73 Minn. 58, 72 Am. St. Rep. 603, 75 N. W. 756; Phillips v. Keysaw, 7 Okla. 674, 56 Pac. 695; Kirtley v. Dykes, 10 Okla. 16, 62 Pac. 808; Killebrew v. Hines, 104 N. C. 182, 17 Am. St. Rep. 672, 10 S. E. 159, 251; Hinton v. Walston, 115 N. C. 7, 20 S. .E. 164; Jenkins v. McCoy, 50 Mo. 348; Dollar v. Roddenbery, 97 Ga. 148, 25 S. E. 410; 8 Ballard, Real Prop. § 99; Cobbey, Replevin, § 378; Shinn, Replevin, § 227; 12 Cyc. 977; 8 Am. & Eng. Enc. Law, 329.

One who sows, cultivates, and harvests a crop upon the land of another is entitled to the crop as against the owner of the land, whether he came into possession of the land lawfully or not, so long as he remains in possession until crop is harvested. Gunderson v. Holland, 22 N. D. 258, 133 N. W. 546; Golden Valley Land & Cattle Co. v. Johnstone, 21 N. D. 101, 128 N. W. 691, Ann. Cas. 1913B, 631; Olson v. Huntamer, 6 S. D. 364, 61 N. W. 479; Sornberger v. Berggren, 20 Neb. 399, 30 N. W. 413; Johnston v. Fish, 105 Cal. 420, 45 Am. St. Rep. 53, 38 Pac. 979; Groome v. Almstead, 101 Cal. 425, 35 Pac. 1021; Page v. Fowler, 39 Cal. 412, 2 Am. Rep. 462; Huerstal v. Muir, 64 Cal. 450, 2 Pac. 33; Martin v. Thompson, 62 Cal. 618, 45 Am. Rep. 663; Dollar v. Roddenbery, 97 Ga. 148, 25 S. E. 410; Lindsay v. Winona & St. P. R. Co. 29 Minn. 411, 43 Am. Rep. 228, 13 N. W. 191; Adams v. Leip, 71 Mo. 597; Jenkins v. McCoy, 50 Mo. 348; Harris v. Turner, 46 Mo. 438; Morgner v. Biggs, 46 Mo. 65; Boyer v. Williams, 5 Mo. 335, 32 Am. Dec. 324; Edwards v. Eveler, 84 Mo. App. 405; McAllister v. Lawler, 32 Mo. App. 91; Stockwell v. Phelps, 34 N. Y. 363, 90 Am. Dec. 710; Hinton v. Walston, 115 N. C. 7, 20 S. E. 164; Faulcon v. Johnston, 102 N. C. 264, 11 Am. St. Rep. 737, 9 S. E. 394; Ray v. Gardner, 82 N. C. 454; Brothers v. Hurdle, 32 N. C. (10 Ired. L.) 490, 51 Am. Dec. 400; Phillips v. Keysaw, 7 Okla. 674, 56 Pac. 695; Churchill v. Ackerman, 22 Wash. 227, 60 Pac. 406.

Defendants are not entitled to recover on their counterclaim. This is an action against the landowner for converting the crop after he had served notice of cancelation of the sale contract. He seeks to counterclaim the balance of the purchase price, under such contract. His counterclaim did not arise out of the "transaction," nor is it connected with the "subject-matter of this action." Warren v. Ward, 91 Minn. 254, 97 N. W. 886; Gillilan v. Oakes, 1 Neb. (Unof.) 55, 95 N. W. 511;

29 N. D.—2.

Shenners v. Pritchard, 104 Wis. 287, 80 N. W. 458; Thompson v. Howard, 31 Mich. 309; McNutt v. Hilkins, 80 Hun, 235, 29 N. Y. Supp. 1047; Welsh v. Carder, 95 Mo. App. 41, 68 S. W. 580.

The defendant elected as to his remedy, and he cannot rescind or repudiate his action in so doing. He canceled the contract; therefore he is not entitled to recover in any action the balance of the purchase price. The rescission terminates the rights of the parties to the contract. Rev. Codes 1905, § 5380; 39 Cyc. 1399; Warren v. Richmond, 53 Ill. 52; Rowe v. Rowe, 5 Ill. App. 331; Chrisman v. Miller, 21 Ill. 227; Little v. Thurston, 58 Me. 86; Frost v. Frost, 11 Me. 235; Winter v. Livingston, 13 Johns. 54; Icely v. Grew, 6 Nev. & M. 467; Harvey v. Wiens, 16 Manitoba L. Rep. 230; Fraser v. Ryan, 24 Ont. App. Rep. 441; Sterman v. Thornton, 3 Ky. L. Rep. 540; Johnson v. Jackson, 27 Miss. 498, 61 Am. Dec. 522.

In fact the plaintiff might well claim the return of that portion of the purchase price already paid. Drew v. Pedlar, 87 Cal. 443, 22 Am. St. Rep. 257, 25 Pac. 749; Harris v. Catlin, 37 Tex. 581; Houston v. Killough, — Tex. —, 13 S. W. 959; Staley v. Murphy, 47 Ill. 241; Castle v. Floyd, 38 La. Ann. 583; Milligan v. Ewing, 64 Tex. 258; Conrad v. Grand Grove, U. A. O. D. 64 Wis. 258, 25 N. W. 24; Hamill v. Thompson, 3 Colo. 518, 14 Mor. Min. Rep. 690; Davis v. Smith, 5 Ga. 274, 48 Am. Dec. 279; Frink v. Thomas, 20 Or. 265, 12 L.R.A. 239, 25 Pac. 717.

Defendant who has tortiously obtained possession of personal property cannot, in trover for its conversion, show in mitigation of damages that he sold it and applied the proceeds to a just debt of plaintiff. East v. Pace, 57 Ala. 521; Marin v. Satterfield, 41 La. Ann. 742, 6 So. 551; Northrup v. McGill, 27 Mich. 234; Sprague v. McKinzie, 63 Barb. 60; Lyon v. Yates, 52 Barb. 237; Ball v. Liney, 48 N. Y. 6, 8 Am. Rep. 511, affirming 44 Barb. 505; Mississippi Mills v. Meyer, 83 Tex. 433, 18 S. W. 748; 38 Cyc. 2103, and cases contained in note 13; Pierce v. Schenck, 3 Hill, 28; 3 Sutherland, Damages, 483.

The law does not permit the wilful and arbitrary conversion of property as a method of satisfying or offsetting mutual claims. Carpenter v. Manhattan L. Ins. Co. 93 N. Y. 552; Ball v. Liney, 48 N. Y. 6, 8 Am. Rep. 511.

BRUCE, J. (after stating the facts as above). It is quite clear from the evidence that, though the notice of the cancelation of the contract was served on July 20th, 1911, neither the Halvorsen Company nor the Hammer-Condy Company made any demand for the possession of the land, nor attempted to enter thereon, until October, 1911, when they seized the flax. The service of the notice of cancelation was not in itself sufficient to confer upon the defendants any title in the grain in controversy. It is also clear that in April and prior to this time the said Roney sowed the crop in question. Such being the case the holding of the Minnesota court in the case of Aultman & T. Co. v. O'Dowd, 73 Minn. 58, 72 Am. St. Rep. 603, 75 N. W. 756, which is followed by this court in the case of Golden Valley Land & Cattle Co. v. Johnstone, 21 N. D. 101, 128 N. W. 691, Ann. Cas. 1913B, 631, seems to be controlling. In that case the court said: "The fact that the owner of the premises may recover the rents and profits of the land for which it is being withheld precludes the idea of his right to recover the crops. It is the value and use of the land which the owner recovers, and not the fruits of the land. A contrary rule would give the owner the value of the use of the land and the value of the labor of the farmer in producing the crop, for the crop contains the value of both. In this case not only did Nelson sow and care for the crop before plaintiff became the owner of the land, but he continued in possession of the same thereafter, and was permitted to harvest and thresh it, and remove the same to his own granary. It would be an oppressive rule to permit the plaintiff to remain inactive while this was going on and Nelson adding to the gross value of the crop which he had raised in the course of months of husbandry, and then deprive him of the entire property. We sanction no such rule."

It is true that in this case there is some testimony to the effect that the tenant was instructed by the Halvorsen Company to harvest the crop for it, but it is admitted that Roney had no knowledge of these instructions, and there is no controversy over the question that the land was seeded by Roney before any notice had been given to him of the cancelation of the contract. The rule as laid down in the Minnesota court, indeed, has not merely been affirmed by this court in the case of Golden Valley Land & Cattle Co. v. Johnstone, supra, but in the case of

Gunderson v. Holland, 22 N. D. 258, 133 N. W. 546. It, as far as we can learn, has universal recognition. See 12 Cyc. 977; Brown's Bl. Com. 235.

Nor do we believe that the counterclaim was availing in this case. The defendants had clearly elected to cancel the contract, and not to abide by it. Such being the case, it is clear that the defendants could not sue for the unpaid balance of the purchase price. Warren v. Ward, 91 Minn. 254, 97 N. W. 886; Gillilan v. Oakes, 1 Neb. (Unof.) 55, 95 N. W. 511; Shenners v. Pritchard, 104 Wis. 287, 80 N. W. 458. It is well settled, indeed, that a party may not take contradictory positions, and where he has a right to choose one of two modes of redress, and the two are so inconsistent that the assertion of one involves the negation or repudiation of the other, his deliberate and settled choice of one, with knowledge, or the means of knowledge, of such facts as would authorize a resort to each, will preclude him thereafter from going back and electing again. Thompson v. Howard, 31 Mich. 309; McNutt v. Hilkins, 80 Hun, 235, 29 N. Y. Supp. 1047, 1049; Welsh v. Carder, 95 Mo. App. 41, 68 S. W. 580.

So, too, the counterclaim was unavailing because it was not pleadable in the case at bar. The action of conversion is a tort action, and the counterclaim set forth an action on the contract. The cause of action, being the contract for the payments alleged to be due, was not a cause of action "arising out of the contract or transaction set forth in the complaint as the foundation of the plaintiff's claim or connected with the subject of the action." See § 6860, Rev. Codes 1905. In order to be pleadable, it must have been such. Force v. Peterson Mach. Co. 17 N. D. 220, 116 N. W. 84; Braithwaite v. Akin, 3 N. D. 365, 56 N. W. 133.

The judgment of the District Court is affirmed.