ADOLPH RAAD, Respondent, v. R. A. GRANT and Ethel M. Grant, Appellants.

(169 N. W. 588.)

**Appeal — error assigned on — party asserting must clearly show it — from record.**

1. A party who asserts error on appeal must show the existence thereof clearly and affirmatively from the record itself.

**Record complete — claimed omissions from — presumption as to — if included — would sustain decision — contingencies presumed.**

2. Where the record is incomplete it will be assumed that the portions

omitted, if included, would have sustained the decision. And where, on any contingency in the state of the record, the decision below might have been valid, such contingency will be presumed.

**Settled statement of case — absence of — findings of fact — covering matters not in issue — covered on trial — presumption.**

3. Where no statement of case has been settled, and the findings of fact cover matters not embraced in the issues formed by the pleadings, it will be presumed that such additional matters were properly made determinable by the action of the parties upon the trial.

**Agreement of settlement — judgment based upon — evidence — supporting.**

4. In the instant case it is *held* that a judgment against the defendants predicated upon a certain agreement of settlement is not shown to be erroneous by the record presented on this appeal.

Opinion filed November 4, 1918. Rehearing denied November 29, 1918.

From a judgment of the District Court of Hettinger County, Honorable *W. C. Crawford,* Judge, defendants appeal.

Affirmed.

*Jacobsen & Murray,* for appellants.

A vendor of land is entitled to retain money paid by the vendee on account of the purchase price as liquidated damages, after the vendee's breach, whether it be so designated in the contract or not. Glock v. Howard & W. Colony Co. (Cal.) 55 Pac. 713; 39 Cyc. 1325, 1382.

A vendee cannot in any event recover back such money without complying with the settlement contract and turning back the contract for deed. 13 C. J. 567–572.

In this case the defendants were the prevailing parties and entitled to costs, as a matter of course. Comp. Laws 1913, §§ 7789, 7794.

*M. S. Odle,* for respondent.

The appellants not having paid, offered to pay, nor tendered the amount fixed by the settlement contract, nor returned the notes canceled, as provided by such contract, their obligation created by such contract was never satisfied or discharged. Comp. Laws 1913, § 5800.

A money obligation is only discharged or extinguished by a due offer of payment, and the depositing of the money in the name of the creditor in some suitable bank, with notice thereof to the creditor. Comp. Laws 1913, § 5815.

CHRISTIANSON, J.   This is an action to rescind a contract for the purchase and sale of 160 acres of land, in Hettinger county in this state, and to recover the consideration paid under the contract.

The plaintiff's claim as stated in the complaint is that the defendant R. A. Grant "falsely and fraudulently represented that said land was much nearer Mott, North Dakota, and Burt, North Dakota, both market points for said land, than the same in fact is; that he falsely and fraudulently represented that said land was all good farming land with no gumbo or stone on the same, when in truth and in fact the said land has stone on the same and much of the same is gumbo; that he falsely and fraudulently represented that said land or place had a good well of water thereon, when in truth and in fact the water thereon cannot be used; that he falsely and fraudulently represented that said land was worth $40 per acre and that all land adjoining and near was selling for that amount, when in truth and in fact said land is not worth to exceed the sum of $25 per acre; that he falsely and fraudulently induced this plaintiff to buy said land for the sum of $39 per acre or a total of $6,240." And that the plaintiff, relying upon said representations, agreed in writing to buy the premises, and paid to the defendants the sum of $1,000 as part of the purchase price. That by reason of the falsity of said representations, the plaintiff was deprived of all the benefits which he otherwise would have derived from the purchase, and that as soon as he discovered that the representations were false, he demanded a rescission, and a return of the $1,000 which he had paid to the defendants.

The defendants, in their answer, admit that they sold the land in controversy to the plaintiff under the written contract attached to the answer, and that the plaintiff paid $1,000, as part of the purchase price according to the terms of such contract. The answer further avers that the plaintiff has defaulted in the terms of the contract, rendering the same subject to cancelation, and that the defendants have elected to cancel and terminate the contract. The defendants prayed judgment:

That plaintiff's action be dismissed; that the land contract be canceled and terminated, and all rights of the plaintiff thereunder foreclosed, and that the $1,000 paid by the plaintiff be forfeited to the defendants as liquidated damages under the terms of the contract.

The case was tried to the court without a jury. The court made findings of fact, among others, to the effect: "That prior to entering into said contract the plaintiff personally examined the land on two different occasions, that the defendants did not misrepresent to the plaintiff that there was no gumbo or stone on the land; that the defendants did not misrepresent the distance of said land from Mott and Burt; that the defendants did not misrepresent the value of said land; that prior to the purchase of the land the plaintiff rode out from Mott to said land on two different occasions and had an opportunity to observe the distance of said land from Mott and Burt; that the plaintiff did not rely upon any of the statements made by the defendants relative to the situation of the land or the character of same; that at the time of entering into said contract the reasonable value of said land was $40 per acre; that the defendants did not misrepresent the well; that at the time of making said contract said well did contain average North Dakota water; that said land contained 160 acres and had 150 acres broken thereon and under cultivation, and that it was 8½ miles from Mott and 6 miles from Burt; that the defendants did not commit any fraud upon the plaintiff in connection with the sale of said land."

The court further found: "That on the 24th day of September, 1917, the plaintiff and defendants entered into the following agreement in writing: 'September 24th, 1917. I hereby agree to surrender to R. A. Grant contract for deed which I hold conveying the N. E. ¼ of 14–132–92, upon payment of $200 on or before December 1st, 1917, providing that he will be put to no further expense in connection with this settlement.' "

The court also found that the defendants have at all times been willing, ready, and able to comply with the terms of said land contract and settlement agreement, and that the defendants have incurred expenses aggregating $200 in conducting the litigation in the instant case. The court ordered judgment: (1) That the contract "be and the same is hereby in all things foreclosed and canceled, and the plaintiff barred from all right to redemption thereunder, and the defendants be and they are hereby given immediate possession of said premises, and defendants' title to said premises is quieted as to any and all claims of the plaintiff to said land;" (2) that the plaintiff have judgment against the defendants for the sum of $200, with interest thereon at 6

per cent from September 24, 1917; and (3) that each party pay his own costs and disbursements. Judgment was entered as ordered, and defendants appeal.

The only error assigned on this appeal is that the court erred in rendering judgment against the defendants for $200, and interest. The appeal is taken from the judgment roll proper. No statement of case has been settled. Hence, we have no means of knowing what evidence was introduced, stipulations made, or proceedings had in the court below. We have before us merely the pleadings, the findings of fact, conclusions of law, and the judgment. It is, of course, elementary that the judgment comes before us with all presumptions in its favor. And the appellant has the burden of showing error. And he must present a record affirmatively showing such error. 2 Enc. Pl. & Pr. 423, 424; Erickson v. Wiper, 33 N. D. 193, 225, 157 N. W. 592. "A mere suspicion or color of error is not sufficient, but every reasonable intendment establishing the regularity of the decision rendered must be removed, as all doubtful interpretations will be resolved in favor of the validity of the action of the trial court." 2 Enc. Pl. & Pr. 425. Where a material fact or circumstance essential to establish the error is omitted, the presumption on appeal is that it would have sustained the decision objected to, if included. And where the record does not affirmatively show error, it will be presumed "that every proceeding below essential to its legality was validly taken, and that every fact essential to its regularity was legally shown. And where, on any contingency supposable in the state of the record, the decision below might have been valid, such contingency will be so presumed." 2 Enc. Pl. & Pr. 425, 428–433.

And so, while the settlement agreement was not an issue under the pleadings, we must assume that it properly became one by action of the parties during the course of the trial. The plaintiff in his brief asserts that the agreement was offered in evidence by the defendants. As already stated we have no means of knowing what the fact is with respect to the admission of this agreement, but we must assume, in support of the decision appealed from, any contingency which might have occurred upon the trial under which it might have been proper for the court to render the judgment which it did. Hence, we must assume that the settlement agreement came properly before the court by action of the defendants themselves.

It will be observed that the defendants prayed for affirmative equitable relief against the plaintiff. And defendants were awarded the affirmative relief asked. The land contract was adjudged canceled, plaintiff's rights in the land were terminated, and defendants were awarded the immediate possession of the land. In this connection it should be noted that there is nothing to indicate that the defendants ever served notice of cancelation of the land contract as required by article 4, chapter 30, Code of Civil Procedure. Nor is there any contention that the defendants have paid to the plaintiff the amount stipulated in the settlement agreement, or that they have made offer of payment, followed by deposit, in accordance with § 5815, Compiled Laws 1913, and thereby extinguished the obligation. The defendants availed themselves of the settlement agreement, and received the benefits of its provisions, upon the trial. The defendants were awarded immediate possession of the land; and all rights of the plaintiff thereto, including the right of redemption, were annulled. This portion of the judgment was decidedly favorable to the defendants. It was more favorable than the court was required to render under the facts found, —if the settlement agreement is excluded. It seems probable that it was on the strength, and by virtue, of that agreement that the court decreed that the plaintiff be barred from all right of redemption in, defendants given immediate possession of, and defendants' title quieted against all claims of the plaintiff to, the land.

On this appeal, the defendants seek to retain the benefit of this favorable portion of the judgment. They have carefully limited their assignments of error so as to assail only that portion of the judgment which awards to the plaintiff judgment against the defendants for the amount stipulated to be paid under the settlement agreement. The only question presented on this appeal is whether that portion of the judgment should be eliminated and the remainder of the judgment allowed to stand. Upon the record before us we are not prepared to say that the trial court erred in rendering the judgment which it did. The defendants asked for and received equitable relief. We cannot say that the trial court erred in requiring these defendants to pay to the plaintiff the amount stipulated in the settlement or compromise agreement of September 24, 1917. It follows from what has been said that the judgment appealed from must be affirmed. It is so ordered.

BRUCE and BIRDZELL, JJ., concur.

GRACE, J. I concur in the result.

ROBINSON, J. (dissenting). This is an action to rescind a contract for the purchase and sale of a quarter section of land which is about 10 miles from Mott, in Hettinger county, North Dakota. (N. E. $\frac{1}{4}$ 14–134–92.) In May, 1917, the plaintiff contracted to buy the land at $39 an acre and to pay (as he did) $1,000 cash and the balance at stated times, with interest, and to pay the taxes for the year 1917, and during that year the defendant reserved to himself the use of the land. And thus the sale price was about $45 an acre.

The complaint avers that to induce the plaintiff to make the contract and to pay $1,000 cash, R. A. Grant falsely misrepresented the nearness of the land to Mott and Burt, the nearest market towns; and that it was all good farming land, with no gumbo or stones, and that it had a good well, and that it was worth $40 an acre; and that all adjacent land was selling at $40 an acre; that plaintiff relied on said representations, which were wholly false. The well did not contain water fit for use, and there was on the land much stone and gumbo, and it was not worth over $25 an acre.

In the brief of counsel for plaintiff, it is said that, at the time of contracting, plaintiff was a mere boy, in his early twenties, and he resided at Madison, South Dakota. That in May, 1917, plaintiff arrived at Mott with a confederate of Grant, was given a sumptuous dinner, and taken on a car to overlook the country and to see the land. That about dusk Grant drove hurriedly along one side of the land, falsely assuring the plaintiff that it was all the same as that along the road; that it had a good well and was free from stones or gumbo, and that it was only 8 miles from Mott, when in truth it was 10 miles from Mott. It had several acres of stone and gumbo land, and the well was unfit for use.

The answer denies any fraud or misrepresentation, and avers that the defendants have been damaged by reason of the sale in the sum of $3,000 or more. It demands a rescission of the contract and a forfeiture of the $1,000. The action was commenced in due time, to wit, November 13, 1917. On March 15, 1917, judgment was entered, and

on March 20th, defendants appealed. Though it is not alleged in the answer, the court found, that the parties had made a written agreement as follows:

September 24, 1917.

I hereby agree to surrender to R. A. Grant contract for deed which I hold, conveying the northeast quarter of 14–132–92 upon payment of $200, and R. A. Grant agrees to surrender all notes given with said contract, and to pay $200 on or before December 1, 1917, if not put to further expense in connection with the settlement.

[Signed] Adolph Raad
R. A. Grant.

The judgment is that the contract be canceled and that Grant pay the $200. The conditional promise to pay $200 amounts to nothing; it was not in accord and satisfaction; it was repudiated by Grant, and it was not pleaded, and it should not have been received in evidence. The judgment should have been in favor of the plaintiff for a rescission of the contract and a return of the $1,000, with interest, or it should have been for the foreclosure of the contract by a sale of the land, or by giving the plaintiff a reasonable time to make his payment in accordance with the contract.

It is true the contract contains the clause that in case the purchaser fails to make any payment the contract shall, at the option of Grant, be canceled, and all payments shall be forfeited and retained as damages; but the province of equity is to grant relief from penalties and forfeitures, and not to enforce them. "The rule is practically absolute that equity will not lend its aid to enforce either a penalty or a forfeiture." 16 Cyc. 75, 80.

A party to a contract may rescind the same in the following cases: 1. If the consent of the party rescinding was given by mistake or obtained by fraud or undue influence. Comp. Laws, § 5936. Undue influence consists: a. In the use by one in whom confidence is reposed by another, of such confidence for the purpose of obtaining an unfair advantage over him. b. In taking an unfair advantage of another's credulity or weakness of mind. c. A contract by a minor between eighteen and twenty-one years may be rescinded or disaffirmed as of course, on returning the consideration.

The young are credulous and trusty. They make quick friendships and are very liable to imposition. The law is not disposed to look with favor on overreaching and unscrupulous contracts. It is not more important to protect the physically weak against assaults of the strong and powerful, than to protect the mentally weak or credulous against the cunning devices of the artful and unscrupulous.

While the record does not present a statement of the case, there are facts which do speak. The plaintiff is lacking in years and in shrewdness, and his counsel is a young lawyer just commencing the practice. Defendant is a shrewd land trader, and he has no burden of scruples. In May, 1917, he received from the boy plaintiff $1,000 on a sharp and overreaching land contract, and he has shown himself perfectly willing to keep the land and the money. He has always retained possession of the land, and has never given the plaintiff any value for his money. He has induced the plaintiff to sign a paper releasing his claim to the land and the money for a mere conditional promise to pay him $200, and now, without offering to pay $1, he is willing to retain the land and the $1,000 of plaintiff's money.

The court may well take official notice of what is generally known concerning the average rainfall, the crop, and land values in Hettinger county. Twenty-five dollars to $30 an acre is a good price for any ordinary quarter section of land. Expert opinion fixes the average valuation at $17.62. In township 134 of range 92, the assessed valuation per acre is $3.92, and most of the land in that township is nearer market and better located than section 14. Manifestly there was a mistrial and a gross miscarriage of justice. Hence, the judgment should be reversed and a new trial granted.

This case has been decided without any conference and the result of the majority opinion is to permit a robbery to the amount of $800.

## On Petition for Rehearing.

PER CURIAM. Defendants have petitioned for a rehearing. They contend that our decision in this case is contrary to the rule announced in Regent State Bank v. Grimm, 35 N. D. 290, 159 N. W. 842. An examination of the decision in the Grimm Case will disclose that in that case we expressly recognized the rule which we invoked in sustaining the judgment in the case at bar.

It is also contended that in our former opinion we held it to be necessary to serve notice of cancelation of a land contract as a prerequisite to the maintenance of an action to cancel such contract; and that in so doing we overlooked chapter 151, Laws of 1917, which provides that such notice "shall not be deemed necessary where the contract in question is sought to be terminated by an action at law or in equity, brought for that purpose upon failure to perform." This contention is based upon an erroneous premise. We did not hold in our former opinion that service of notice of cancelation was a necessary jurisdictional prerequisite to an action to cancel a land contract. In fact we have expressly held (in another case) that such contract may be canceled by action without the prior service of notice of cancelation. It is a fact, however, that in many cases such notice has been served prior to the institution of the action to cancel the contract. And obviously a different judgment might properly be rendered where notice of cancelation has been served from that which might be rendered where it has not.

We referred to the fact that notice of cancelation has not been served, in discussing the terms of the judgment rendered by the trial court. It has been the policy of our laws for a long period of years that executory contracts for the sale of land shall not be canceled, and payments thereon forfeited, without first affording the vendee an opportunity to comply with the terms, and obviate the cancelation of the contract. The vendor·may not by stipulation in the contract reserve the right to declare a cancelation; nor can he declare such cancelation except by service of written notice stating the grounds of default. Comp. Laws 1913, §§ 8119–8122. Under the original statute enacted in 1903 (Laws 1903, chap. 204), the vendee was allowed "thirty days after the service of the notice upon him, in which to perform the conditions or comply with the provisions upon which the default shall have occurred." And such compliance obviated a cancelation, and caused the contract to remain in full force. § 8122, supra. This policy was not only continued in force by chapter 151, Laws 1917, but the time allowed to the vendee in which to make compliance was extended to six months. Of course, where a contract is sought to be canceled by an equitable action, the court is required to proceed on equitable principles and render such judgment as the equities in the

case justify. In the case at bar the defendants introduced in evidence a certain settlement agreement. The trial court gave them the benefit of the provisions of such agreement, and ordered a cancelation of the contract without right of redemption, and awarded the defendants the immediate possession of the premises. In awarding such relief, the court also required the defendants to pay the amount which they had agreed to pay in such agreement. We refused to interfere with this latter provision of the judgment. The views of the court have undergone no change on this point since the decision was handed down.

It is insisted, however, that in any event the judgment should be reversed as against Ethel M. Grant, for the reason that she did not sign the settlement agreement. This question is presented for the first time on the petition for rehearing. This fact alone would justify a denial of the petition as to this ground. Sweigle v. Gates, 9 N. D. 538, 84 N. W. 481. But in this case a denial of the petition also as to this ground may well be placed upon the merits of the proposition. For the findings of fact are to the effect that "the plaintiff and *defendants* entered into 'the' agreement in writing."

The former decision will stand. A rehearing is denied.

GRACE, J. I concur in the result.