MARTIN PAULSON, Respondent, v. S. E. HAMMOND, Appellant.

(191 N. W. 462.)

**Specific performance — of contract for deed held properly awarded.**

In a proceeding for specific performance of a contract for a deed, where the vendee alleges a defense and introduces evidence of misrepresentation concerning the distance of the land from vendee's home farm, it is *held*, for reasons stated in the opinion, that the findings for, and judgment of, specific performance were properly rendered.

Opinion filed December 5, 1922.

Specific Performance, 36 Cyc. p. 784 n. 15 New.

Proceeding for specific performance in District Court, Richland County, *McKenna*, J.

Defendant has appealed from the judgment.

Affirmed.

*W. S. Lauder*, for appellant.

The plaintiff having elected to cancel and terminate the contract is estopped to use the contract as a basis for a recovery of a money judgment against the defendant, or any other judgment except the cancel-

ation of the contract. Warren v. Ward, a Minnesota case reported in 97 N. W. 886.

This precise question was involved in the case of Rooney v. Halvorson, 29 N. D. 13. As will be seen, in that case this court cited with approval the Minnesota case above referred to. In that case the defendants sought to cancel the contract, and discussing the question this court said:

"Nor do we believe that the counterclaim was availing in this case. The defendants had clearly elected *to cancel the contract,* and not abide by it. Such being the case, it is clear that the defendants *could not sue for the unpaid balance of the purchase price.* Warren v. Ward, 91 Minn. 254, 97 N. W. 886; Gillilan v. Oakes, 1 Neb. (Unof.) 55, 95 N. W. 511; Shenners v. Pritchard, 104 Wis. 287, 80 N. W. 458.

It is well settled, indeed, that a party may not take contradictory positions, and where he has a right to choose one of two modes of redress, and the two are so inconsistent that the assertion of one involves the negation or repudiation of the other, his deliberate and settled choice of one, with knowledge, or the means of knowledge, of such facts as would authorize a resort to each, will preclude him thereafter from going back and electing again. Thompson v. Howard, 31 Mich. 309; McNutt v. Hilkins, 80 Hun, 235, 29 N. Y. Supp. 1049; Welsh v. Garder, 95 Mo. App. 41, 68 N. W. 580.

"It is elementary that the specific performance of a contract is decreed as a matter of favor rather than of strict legal right, etc." Easten v. Lockhart, 10 N. D. 181–193; Hunter v. Goe, 12 N. D. 509.

In the case of Beebe v. Hanson et al. as will be seen, this court said: "Even when a contract is fair and honest specific performance is not a matter of course. It rests in the sound discretion of the court." 36 Cyc. 544–548. "But when a contract is not in all respects fair and honest, just and reasonable, and based on *an adequate consideration,* then specific performance must be denied, etc."

Inadequacy of consideration affords ample reason for a court to refuse specific performance. Phalen v. Neary, (S. D.) 117 N. W. 142; Trapaagen v. Kirk, (Mont.) 77 Pac. 55; Morrill v. Everson, (Cal.) 19 Pac. 87; Stein v. Archibald, (Cal.) 90 Pac. 538; Wilson v. White, (Cal.) 119 Pac. 895; 2 Warvelle, Vendors, §§ 741–745.

*Wolfe* and *Schneller,* for respondent.

## Statement.

Bronson, J. This is an action for specific performance against a vendee in a contract for a deed. The complaint alleges the making of the contract between the parties on August 9th, 1919, for 160 acres of land whereby defendant paid $1,000 cash, assumed a mortgage for $1,800, and agreed to pay $2,000 on or before Sept. 20th, 1920; the failure of defendant to make such payment of $2,000; the tender to defendant of a warranty deed of the land, pursuant to the contract; and the readiness and ability of the plaintiff to perform; specific performance is demanded and the recovery from defendant of $2,000.

The answer admits the making of the contract, but denies plaintiff's ownership in the land. It alleges a mistake in the description of the land due to the scrivener's error. As a defense, it alleges that plaintiff falsely represented to defendant that the land was located not more than 7 miles from the farm then owned and occupied by defendant; that the defendant, relying upon such representation, purchased the land; that the land, in truth, is located more than 10 miles from defendant's land. This defense is also set up as a counterclaim wherein defendant seeks to recover $1,000 paid upon the purchase price of such land. In his reply, plaintiff admits the mistake in description and alleges that the same was made through a mutual mistake. The affirmative defense and counterclaim are denied.

The facts are: Plaintiff is a real estate agent. Defendant is aged fifty-three years and has been a farmer throughout his life. He owned and operated a farm in South Dakota which he sold. Pursuant to correspondence had with his brother-in-law, Peniston, defendant came to Richland county, North Dakota, in August, 1919. Peniston was plaintiff's agent in selling land. Plaintiff, defendant, and Peniston examined the east half of section 11 in township 132, range 52, and the east half of section 7, township 133, range 52. Through plaintiff he purchased the east half of section 11 for a consideration of $120 per acre, and the east half of said section 7. Two contracts for a deed were made for said land in section 7: One, covering the northeast quarter thereof, is the contract involved herein. The other contract, by reason of plaintiff's inability to secure the land, pursuant to the contract, was surrendered and the same annulled. Defendant bought

the land in section 11 on the day before he went to see the land in section 7. Pursuant to defendant's testimony, he talked about buying some more land for pasture and hay. Plaintiff said that he would show him a half section 7 miles out. He went with plaintiff and Peniston in an automobile to see the land. Upon their return that day, before the contract was signed, defendant asked his brother-in-law what he thought about the deal; he replied that he thought it would be all right. Defendant said the land was quite a distance away; Peniston said "It is only 6 miles from your place." Defendant relied on what Paulson and Peniston told him. He intended to farm all of this land in sections 7 and 11 as one farm, using the land in section 7 for hay and pasture and the land in section 11 for a ranch. Otherwise, defendant testified that he was familiar with the government survey of lands; he knew how the sections were located in different townships; how the townships were located in the different ranges; he knew that this land in section 7 was several miles northwest of his farm in section 11. Further, he testified that there was.an angling road between the land in sections 7 and 11; that there was a graded road traveled by the public that ran to the northwest along the "Soo" Railroad line. As the map discloses, the "Soo" Railroad line runs northwest about a mile east from the land in section 7 and in section 11. Plaintiff testified that he owns another half section of land a mile west from the land in section 11, on the north side of the railroad. It does not appear when he purchased such land. Apparently, from the testimony, it has reference to land north of the N. P. Ry. which runs, east and west, just north of section 11. About March 3d, 1920, plaintiff moved upon the land in section 11 and has there lived ever since. In the spring of 1920 defendant directed plaintiff to rent the land in section 7 for hay or to sell the hay. Plaintiff, however, made no arrangements in that regard. Otherwise, plaintiff testified that the land was sandy soil, was fitted only for pasture, and was worth about $15 per acre. Another witness for defendant testified that the land in 1900 was fairly worth just what it was worth for pasturage, and that $10 per acre would be a big price for it. The testimony in plaintiff's behalf is to the effect that no representation was made concerning the distance of this land from section 11. Plaintiff tendered warranty deed of the land, together with an abstract of title. It is undisputed that a mutual mistake in the contract was made

by erroneously designating the township number as "132," instead of the proper number "133."

The trial court found that defendant knew he was buying the northeast quarter of section 7 in a congressional township north of the township wherein his farm in section 11 was situated; that the evidence was insufficient to establish any false representations for the reason that defendant knew it was a physical impossibility for any such representations to be true. The court awarded a reformation of the contract and specfic performance thereof. Pursuant thereto judgment of specific performance was rendered including the right to recover the unpaid purchase price with interest. Defendant has appealed from the judgment and has demanded a trial de novo.

Defendant contends that this is an action to cancel or terminate the contract and, as such, cannot be used as a basis for specific performance. That defendant was induced to make the contract through misrepresentations as to the distance to the land from his other land; that the land was grossly overvalued and therefore it is inequitable to enforce specific performance; that the plaintiff agreed to convey a quarter section of land all of which he never owned by reason of a right of way reservation upon the land.

## Decision.

The action is plainly an action for specific performance to enforce, not to cancel, the contract. There is neither pleading nor proof of any misrepresentation concerning the value of the land. In the change of title there appears a deed from the N. P. Ry. Company to the Johnston Land Company conveying the quarter involved together with other lands wherein a reservation of 7.97 acres is made of a strip of land 100 feet wide from the center line of the "Soo" Railway line as now located. Manifestly, this reservation does not concern this land as the right of way of the railroad does not cross section 7. Following section lines, as a road, from the nearest corner of the east half of section 11 to the east half of section 7, the distance is about 9 miles. Applying a simple formula of mathematics to secure the diagonial distance, a result is obtained of about 6.4 miles. Traversing the distance along the road paralleling the railroad the distance is apparently about 8 miles. From

the evidence it is indeed difficult to determine that there was any misrepresentation of fact, conceding plaintiff's testimony to be wholly true. The actual distance depends upon the basic point taken from each tract of land and the route to be traveled. If defendant's land west of section 11 and north of the railroad be considered, the distance is even less. In view of defendant's knowledge of the governmental survey and the location of the respective tracts, and his personal examination thereof, the facts are insufficient to establish that he was misled. The findings of the trial court are proper. The judgment is affirmed with costs.

BIRDZELL, Ch. J., and ROBINSON, CHRISTIANSON, and GRACE, JJ., concur.